# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| Kristian T. Parks, *Plaintiff*, | Civil Action No. 1:23-CV-309 Atchley/Steger |
| v. | |
| | EEOC Charge No. 494-2023-02405 |
| Deibel Laboratories of Tennessee, LLC; and Operations Manager Colleen M. Scarbrough *Defendants*. | JURY TRIAL |

## COMPLAINT

NOW COMES Plaintiff, Kristian T. Parks, and files this cause of action in U.S. District Court on the grounds that the Defendants' Deibel Laboratories of Tennessee, LLC; and Colleen Scarbrough committed violations of law in reference to employment. Plaintiff avers as follows:

### I. JURISDICTION

1. Deibel Laboratories of Tennessee, LLC is an employer under the meaning of Title VII; T.C.A. §§ 4-21-102(5); and 50-1-304(a)(2). This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §1331 and 1343 to address the federal questions raised by the U.S. Code provisions pursuant to 42 U.S.C. §2000 e-2(a)(1)(2); 42 U.S.C. §2000 e-3 and e-5 and 42 U.S.C. §1981. This Court also has supplemental or pendant jurisdiction over state law claims pursuant to 28 U.S.C. §1367 to resolve questions of state law under T.C.A. § 50-1-304; and Title 4 Chapter 21 of the Tennessee Human Rights Act T.C.A. 4-21-101 et seq.; providing for injunctive relief and other relief against discrimination and unlawful retaliation in employment to secure redress.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a). Defendant Colleen Scarbrough resides in the State of Tennessee.

3. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, occurrences, and events giving rise to this action occurred in Ooltewah, TN at Deibel Laboratories of Tennessee, LLC.

1

## II. JURISDICTIONAL PREREQUISITE

4. Plaintiff contacted the Equal Employment Opportunity Commission (EEOC) in April of 2023 after being wrongfully terminated from Deibel Laboratories. The EEOC scheduled this Plaintiff a appointment for September 22, 2023. Plaintiff timely filed a charge with the EEOC on this date under Title VII of the Civil Rights Act of 1964, as amended et seq. (EEOC Charge No. 494-2023-02405) for the reasons described herein this Complaint. On September 29, 2023, the Plaintiff received a Right-to-Sue notice on the charge(s) described herein this Complaint.

## III. NATURE OF THE CASE

5. This case involves a Complaint of racial discrimination; fraud, whistleblowers retaliation; wrongful termination; Breach of Employment Contract; and violation of 42 U.S.C. §1981 et seq. alleging that the Defendants' Deibel Laboratories of Tennessee, LLC and Colleen M. Scarbrough have engaged in unlawful employment practices based on fraud, race and in Contract. Plaintiff's Complaint deals with disparate treatment relevant to the terms and conditions of employment for purposes of Title VII of the 1964 Civil Rights Act, codified at 42 U.S.C., the Tennessee Human Rights Act, codified at T.C.A. Title 4 Chapter 21 including various acts of abuse and harassment.

## IV. THE PARTIES

6. Plaintiff, Kristian T. Parks, resides at 4904 Renezet Drive; Chattanooga, Tennessee 37416. The Plaintiff is a resident of Hamilton County, Tennessee.

7. Defendant, Deibel Laboratory Inc. of Tennessee, LLC is Corporation doing business in the state of Tennessee whose principal place of business is 8817 Production Lane; Ooltewah, Tennessee 37343 and may be served through their Registered Agent - R. Wayne Peters located at 320 McCallie Avenue; Chattanooga, Tennessee 37402.

8. Defendant, Colleen M. Scarbrough, resides at 141 Cochise Drive SE; Cleveland, TN 37323. The Defendant is a resident of Bradley County, Tennessee.

## V. STATEMENT OF FACTS

9. Plaintiff, Kristian T. Parks, an African American female is a former employee with the Defendant Deibel Laboratories of Tennessee, LLC from February 14, 2023 until her wrongful termination on April 12, 2023 for whistle blowing and complaining of disparate treatment.

10. Deibel Laboratories was Plaintiff's first Laboratory job since graduating college in Fall 2020 with a Bachelor's Degree in Forensic Chemistry. Plaintiff followed the instructions of the Defendant Scarbrough. When hired, Plaintiff complained that she hardly received any training and was placed in the Media Department by Defendants' and was expected to just figure it out. Michael Jeffery (media co-worker) apologized to Ms. Parks for not having the time to train her.

11. On April 4-5, 2023, this was Plaintiff's first audit. Plaintiff did what she was instructed to do by Defendant Colleen Scarbrough, Quality Control personnel, and other Deibel Managers – "the Deibel Laboratory way". These procedures were found to be improper under the U.S. FDA guidelines of what Scarbrough and Quality Control instructed. I did what I was instructed to do.

12. On April 06, 2023, Plaintiff filed a Complaint with Deibel's Human Resources Director Kimberly Cook on Team Leader of Operations Defendant Colleen Scarbrough who had created a Hostile Working Environment by yelling and being verbally abusive to me. Scarbrough gave me unreasonable demands; thus to cover up for her conduct violations of U.S. FDA regulations.

13. Defendant instructed Parks to take inappropriate shortcuts in the media department that were in violation of U.S. FDA guidelines. Scarbrough would often state, "Do it the Deibel way". These improper testing procedures appear to have been on-going for a while. There is a pattern and practice here. Scarbrough stated she has worked in the Media Department for many years.

14. On Friday, April 07, 2023 at 3:10 p.m., Plaintiff was called into the office by Defendant Scarbrough to tell her to speed up. Plaintiff stated, "I am going as fast as I can". Defendant sent Plaintiff home. Defendant Scarbrough was retaliating against me for filing a Complaint on her.

3

15. On April 07, 2023, Parks filed another Complaint and submitted it to HR Director Cook. Plaintiff stated, that Colleen Scarbrough did not want us to get caught by M&M Mars Auditors making this Non Fat Dairy Milk (NFDA) media and putting it into the Autoclave(s) because this was a violation of U.S. FDA of how it was being made (instructed to use tap-faucet water instead of required distilled water). HR Director Cook never spoke with Plaintiff about the Complaints.

16. Defendant Deibel made the decision whether to discipline Defendant Scarbrough or not. Deibel was well aware of these U.S. FDA violations or should have been. Also, of Scarbrough's egregious conduct if they performed an investigation as they stated before they terminated me. Plaintiff was clearly engaged in statutorily protected activity, also given the fact anti-retaliation provisions can be triggered by informal Complaints. I spoke with HR in Idaho on April 7, 2023.

17. Defendant Deibel HR Director Kimberly Cook made the decision to terminate Plaintiff without investigating the Complaints. Cook fraudulently stated she did perform an investigation. No one contacted me. I was not given the opportunity to refute the alleged findings of Deibel's investigation. Deibel just made up a frivolous reason to terminate me. Plaintiff had a continued expectancy in employment pursuant to her Contract with Deibel signed on February 14, 2023.

18. Plaintiff's discharge was in retaliation for having complained to Deibel HR Department regarding Colleen Scarbrough's unprofessional, confrontational, and possibly racially motivated conduct towards me. Also, for reporting- exposing U.S. FDA violations. This may be a practice of all Deibel Labs. Deibel is responsible for the acts of its Supervisory - managerial employees.

19. Defendants' herein engaged in unlawful retaliation towards Plaintiff for having filed and /or participated in a formal Complaint based on disparate treatment and whistle blowing relevant to the terms and conditions of my employment for purposes of Title VII of the 1964 Civil Rights Act, as amended; 42 U.S.C. §2000e-3, e-5; 42 U.S.C. §1981; and THRA T.C.A. 4-21-101 et seq.

4

## VI. CAUSES OF ACTION

### Title VII of the Civil Rights Act of 1964, as amended - 42 U.S.C. §2000 e-2(a)(1)(2)

20. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 19 above as is fully set forth herein.

21. Plaintiff is an African American female, a former employee of Deibel Laboratories of Tennessee, LLC. Plaintiff was hired on February 14, 2023 and terminated on April 12, 2023. Plaintiff was terminated for making Complaints of protected activity (whistleblower); her race-African American (disparate treatment); and not being allowed to take required breaks at times.

22. On April 06-07, 2023, Plaintiff filed Complaints stating Defendant Scarbrough would at times use vulgar profanity; was being verbally abusive and hostile to me; yelling and telling me to speed up; thus to cover up for her intentional negligence and gross FDA regulatory violations.

23. Plaintiff and Michael Jeffrey (co-worker) both African Americans were assigned to work in the Media Department at Deibel Laboratories. Defendant Colleen Scarbrough informed us to by-pass our breaks while Caucasian employees took their 15 minute and lunch breaks at leisure.

24. On April 12, 2023, I let a Caucasian male into the building he stated he had an interview. In a meeting on this date, Defendant Scarbrough stated she was in the process of hiring someone in the Media Department; but was waiting on HR's approval. Later that evening at 7:30 p.m., I received an e-mail that I had been terminated. Deibel hired a Caucasian male Collin Wilson to replace me in the media department. I, Plaintiff have a Bachelors Degree in Forensic Chemistry. Plaintiff is unaware of Collin Wilson's qualifications and laboratory work experience.

25. Plaintiff's termination on April 12, 2023 was due to her race and in retaliation for filing Complaints on Defendant Colleen Scarbrough's conduct to Deibel Laboratories HR Department. Defendants' adverse employment actions violated Title VII - 42 U.S.C. §2000 e-2(a)(1)(2).

5

Title VII of the Civil Rights Act of 1964, as amended Retaliation 42 U.S.C. §2000 e-3 and e-5

26. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25 above as is fully set forth herein.

27. Throughout the entirety of Plaintiff's employment relationship with Defendant Deibel Laboratories, Plaintiff performed her job satisfactorily, received no discipline, reprimands, or write ups. Plaintiff did what she was instructed to do by Deibel Lab and Colleen Scarbrough.

28. Plaintiff is an African American female, a former employee of Deibel Laboratories of Tennessee, LLC. Plaintiff was hired on February 14, 2023 and terminated on April 12, 2023 for making Complaints of protected activity (whistleblower) on U.S. FDA regulatory violations; my race as a African American (disparate treatment); and reporting a Hostile Work Environment. Defendant Deibel Lab Human Resources acknowledged receipt of the April 06, 2023 Complaint.

29. On Friday, April 07, 2023 at 3:10 p.m., Plaintiff was called into the office by Defendant Scarbrough to tell her to speed up. Plaintiff stated, "I am going as fast as I can". Defendant sent Plaintiff home. Defendant Scarbrough was retaliating against me for filing a Complaint on her. I called Deibel HR Department in Idaho and spoke with a male and female for four (4) minutes.

30. On April 07, 2023, Parks filed another Complaint and submitted it to HR Director Cook. Plaintiff stated, that Colleen Scarbrough did not want us to get caught by M&M Mars Auditors making any Non Fat Dairy Milk (NFDA) media and putting it into the Autoclave(s) because this was a violation of FDA regulations because of how it was being made (instructed to use faucet-tap water instead of required distilled water). Cook never spoke with me about my Complaints.

31. On April 12, 2023, the Plaintiff was terminated for filing 2 (two) Complaints of protected activity (whistle blowing on U.S. FDA violations, race- disparate treatment, and a abusive hostile work environment). Plaintiff's exercise of her protected rights were known to the Defendants'.

6

## Title VII of the Civil Rights Act of 1964, as amended
## Hostile Work Environment – Abuse and Harassment

32. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above as is fully set forth herein.

33. Plaintiff was hired on February 14, 2023 and terminated on April 12, 2023. On April 6 -7, 2023, Plaintiff filed two (2) Complaints of protected activity (whistleblower) for U.S. FDA regulatory violations; my race African American (disparate treatment) and a abusive hostile work environment. The April 6, 2023 Complaint was acknowledged; but not the one on April 7, 2023.

34. Plaintiff stated, Colleen Scarbrough would at times use extreme profanity; was verbally abusive and hostile by yelling at me telling me to speed up; thus to cover up for her intentional gross negligence of U.S. FDA regulatory violations. Scarbrough advised the two (2) African American employees to sometimes omit their lunch and 15 minute breaks and to keep working.

## 42 U.S.C. §1981(a)(b)(c) Intentional Race Discrimination in reference to Contracts

35. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34 above as is fully set forth herein.

36. On February 14, 2014, Plaintiff signed a contractual - agreement with Defendant Deibel to pay Plaintiff $17.00 a hour in wages to include all medical, hospitalization, dental, vision, life and 401k retirement insurance benefits. Deibel breached its Contract with me when it wrongfully terminated me based on discriminatory, retaliatory reasons, and whistle blowing on its practices.

38. Defendant Deibel deprived Plaintiff of federally protected rights based upon my race which is African American "in the making and enforcing of Plaintiff's employment contract, performance, modification, termination of her contract, enjoyment of all benefits privileges, terms and conditions of her contractual relationship". Defendant is responsible for the acts of its supervisory agents and employees. Such adverse actions violates 42 U.S.C. §1981(a)(b)(c). I had full and equal benefits of all laws and rights protected against impairment under §1981.

7

39. Defendant Deibel Laboratory is liable for violation of 42 U.S.C. §1981(a)(b)(c) because the Defendant Colleen Scarbrough (seasoned manager) actions were based on a pattern, practice, policy, and or custom of Deibel Laboratories. My written Complaints and four (4) minute phone conversation to Deibel Laboratory HR Department in Twin Falls, Idaho (both on April 07, 2023) is also evidence that I brought Defendant Scarbrough's conduct to Deibel Laboratories attention.

<u>U.S.C. §1981(a)(b)(c) Intentional Race Discrimination - Retaliation</u>

40. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39 above as is fully set forth herein.

41. On April 06, 2023, Parks filed a Complaint with Deibel HR. Scarbrough had created an abusive and hostile working environment by using extreme profanity, yelling and being verbally abusive. Scarbrough told me to omit my breaks but did not say this to the Caucasian employees. Unreasonable demands were placed on me; too cover up for her U.S. FDA regulatory violations.

42. On April 07, 2023, Parks filed another Complaint and submitted it to HR Director Cook. Plaintiff stated, Scarbrough did not want us to get caught by M&M Mars Auditors making Non-Fat Dairy Milk (NFDA) media and putting it into the Autoclave(s) because of how it was being made. Ms. Scarbrough instructed us to use tap-faucet water instead of required distilled water.

43. Defendant Deibel HR Director Kimberly Cook made the decision to terminate Plaintiff without investigating my Complaints. Cook fraudulently stated she performed an investigation; but no one contacted me. I was not given a opportunity to refute the alleged findings of Deibel's investigation. Deibel just made up a frivolous reason to terminate me. Plaintiff had a continued expectancy in employment pursuant to her Contract with Deibel signed on February 14, 2023.

44. **Plaintiff engaged in protected activities; she suffered an adverse employment action and has established that there was a causal connection between the protected activity and the adverse employment action. Plaintiff was terminated five (5) days after making the two (2) Complaints.

## Tennessee Human Rights Act - T.C.A. 4-21-101 et seq. - Discrimination

45. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 44 above as is fully set forth herein.

46. Throughout the entirety of Plaintiff's employment relationship with Defendant Deibel Laboratories, Plaintiff performed her job satisfactorily, received no discipline, reprimands, or write ups. Plaintiff did what she was instructed to do by Deibel Lab and Colleen Scarbrough. Plaintiff stated she did not receive any formal training when placed in the Media Department. Plaintiff's co-worker, Michael Jeffrey, apologized to me for not having the time to train me.

47. On April 6-7, 2023, Plaintiff filed Complaints with Deibel's HR Department regarding abusive and hostile working environment for using extreme profanity, yelling and being verbally abusive to me. Scarbrough told me to omit breaks; but did not say this to Caucasian employees.

48. Defendants' engaged in disparate treatment of Plaintiff. Defendant Deibel HR Director Kimberly Cook ignored my Complaints when brought to her attention and refused to investigate. Defendant Scarbrough placed me in the Media Department and expected me to just figure it out.

49. On April 12, 2023, I let a Caucasian male into the building he stated he had an interview. In a meeting on this date, Defendant Scarbrough stated she was in the process of hiring someone in the Media Department; but was waiting on HR's approval. Later that evening at 7:30 p.m., I received an e-mail that I had been terminated. Deibel Lab hired Caucasian male Collin Wilson to replace me in the Media Department. I have my Bachelors Degree in Forensic Chemistry. I (Plaintiff) am unaware of Collin Wilson's qualifications and laboratory work experience.

50. Plaintiff's termination on April 12, 2023 was due to her race and in retaliation for filing Complaints on Defendant Colleen Scarbrough's conduct to Deibel Human Resource Department.

51. Defendants' adverse employment actions violated Tennessee Human Rights Act - T.C.A. 4-21-101 et seq. Defendant Deibel Lab is responsible for the acts of its management employees.

9

### Tennessee Human Rights Act - T.C.A. 4-21-101 et seq. – Retaliation

52. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 51 above as is fully set forth herein.

53. On April 06, 2023, Parks filed a Complaint with Deibel HR. Scarbrough had created an abusive and hostile working environment by using extreme profanity, yelling and being verbally abusive. Scarbrough told me to omit my breaks but did not say this to the Caucasian employees. Unreasonable demands were placed on me; too cover up for her U.S. FDA regulatory violations.

54. On April 07, 2023, Parks filed another Complaint and submitted it to HR Director Cook. Plaintiff stated, Scarbrough did not want us to get caught by M&M Mars Auditors making Non-Fat Dairy Milk (NFDA) media and putting it into the Autoclave(s) because of how it was being made. Ms. Scarbrough instructed us to use tap-faucet water instead of required distilled water.

55. Defendant Deibel HR Director Kimberly Cook made the decision to terminate Plaintiff without investigating my Complaints. Cook fraudulently stated she performed an investigation; but no one contacted me. I was not given a opportunity to refute the alleged findings of Deibel's investigation. Deibel just made up a frivolous reason to terminate me. Plaintiff had a continued expectancy in employment pursuant to my Contract with Deibel signed on February 14, 2023.

**56.** Plaintiff engaged in protected activities; she suffered an adverse employment action and has established that there was a causal connection between the protected activity and the adverse employment action. Plaintiff was terminated five (5) days after making the two (2) Complaints.

57. Defendants' unlawful discrimination and retaliation against the Plaintiff was because of her race as a African American. Deibel also discharged Parks for complaining of illegal, hostile, threatening, discriminatory, for whistle blowing of U.S. FDA violations, and retaliatory conduct.

58. Defendants' adverse and retaliatory employment actions violated the Tennessee Human Rights Act - T.C.A. 4-21-101 et seq. in reference to Retaliation and or Retaliatory Discharge.

10

### Breach of Employment Contract

59. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 above as is fully set forth herein.

60. On February 14, 2023, the Plaintiff signed an employment contractual agreement with Defendant Deibel Lab of Tennessee, Inc. to pay the Plaintiff $17.00 a hour in wages to include all medical, hospitalization, dental, vision, life, and 401k retirement insurance benefits. Deibel breached its Contract with Parks when it wrongfully terminated her based on discriminatory and retaliatory reasons; for whistleblowing on its practices and reporting a hostile work environment.

61. Plaintiff could not be terminated for filing a Complaint for exposing violations under the U.S. Federal Drug Administration regulations. Plaintiff had continued employment with Deibel. Plaintiff was not an at-will employee of Deibel. If determined so, the Plaintiff still could not be discharged for a discriminatory reason. Plaintiff could only be terminated for cause. Deibel Lab did not respond to the Complaints filed on April 06-07, 2023. Plaintiff was then terminated on April 12, 2023 without being given the opportunity to be heard on the two (2) Complaints.

### Tennessee Public Protection Act (TPPA) T.C.A. 50-3-104 Whistleblowers Act

62. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 61 above as is fully set forth herein.

63. On April 05, 2023 at approximately 10:00 a.m., Defendant Colleen Scarbrough stated to the Plaintiff and Michael Jeffrey co-worker, that when the M&M Mars Auditors were about to enter the Media Department she would signal for us to switch over to distilled water and to measure it in the cylinder(s) as mandated by the U.S. Federal Drug Administration regulations.

64. M&M Mars- FDA standard requirements. I was told it takes three (3) liters of distilled water for one (1) cylinder. Michael per Colleen, stated that's too time consuming that's why we use tap (faucet) water. I did not know about the cylinder until the day of the M&M Mars audit.

11

65. In the processing media used to test chicken, tap-faucet water was being used. Distilled water was mandated to be used. BAM Media M52 Buffered Listeria Enrichment Broth (BLEB). This is required and mandated for accurate testing of Salmonella, Salmonella vidas, and Listeria for chocolate products. Upon information and belief, Deibel was producing fraudulent reports to its clients and going against mandated U.S. FDA regulations in food testing which endangers the general public. The chicken products Deibel lab tested came from a processing plant in Georgia.

66. In the April 07, 2023 letter - Complaint to Human Resources Department; Deibel HR knew of the significance when Parks stated, "We were not allowed to make this specific media during audit because Colleen did not want M&M Mars Auditors to catch us making this media and putting it into the Autoclave. Also, we were low on NFDM (non fat dairy milk) because we could not make any for two (2) days because Colleen did not want to risk being caught by M&M Mars" (using tap water and not measuring the milk properly by not using the required cylinders).

67. When M&M Mars Auditors left, we (Media) had to play catch up for improperly using tap-faucet water as instructed by Scarbrough. On top of the other media demanded of us from the other departments. Michael Jeffrey, Aveiona Allen, Diego Barajas, and Blake Hodson can attest to Scarbrough stating this on numerous occasions. This appears to have been a on-going practice.

68. I (Plaintiff) was new; was not properly or adequately trained; and I did what Defendant Colleen Scarbrough, Deibel managers and Michael Jeffery instructed me and what they told me to do. As Defendant Colleen Scarbrough always stated, "This is how we do it, the Deibel way".

69. Colleen Scarbrough and Quality Control personnel (Caucasian female) instructed us to fill up approximately 180 (one hundred-eighty) media jugs at night with tap-faucet water; to put caps on the jugs to keep out air spores from getting in the jugs overnight. Air spores create cross contaminates that could easily be detected if immediately tested. Deibel Lab used this process to fool Auditors if Deibel were to have a surprise audit of any of its food processing- testing clients.

70. Out of approximately 100 media, distilled water was only used for about 2 to 3 products. If we used test tubes, distilled water had to be used because tap water could easily be detected.

71. Autoclaves. One was specifically used for sterilizing equipment (old test tubes, caps for media, jugs etc.) and then it were to be properly discarded because it was considered bio hazard. This particular Autoclave was labeled trash disposal. Deibel had two (2) Autoclaves that were in separate rooms. The other Autoclave was specifically designated to be used for sterilizing media which is used for food process testing. Scarbrough told me us both Autoclaves could be used for sterilizing the food testing media; and for sterilizing the bio hazards. Quality Control was aware that this was occurring. This cross contamination practice was in violation of FDA regulations.

72. Defendant Colleen Scarbrough instructed us (media department) that we could throw out bio hazards (old test tubes, media caps, jugs etc.) without sterilizing it in the Autoclave because it saves time. This was a common practice in the Media Department authorized by Scarbrough.

<u>Fraud - T.C.A. 28-3-105; if Deibel submitted false claims to the state of Tennessee to be paid it violated T.C.A. §§4-18-101-107; if U.S. Government-False Claims Act 31 U.S.C. §§3729-3733</u>

73. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 72 above as is fully set forth herein.

74. Defendants' Deibel Laboratories and Colleen Scarbrough fraudulently, persistently and illegally instructed Deibel employees in the Media Department to violate U.S. FDA mandated regulatory procedures and guidelines. Scarbrough would often state, "Do it this way, the Deibel way". There are numerous Deibel employees who heard Scarbrough making this statement.

75. Per Defendant Scarbrough, the Plaintiff and other employees in the Media Department were instructed to use tap-faucet water instead of U.S. FDA required distilled water for testing of all Salmonella, Salmonella Vidas (Chicken and Ice Cream products etc.), and Listeria for Chocolate, caramel, and all nut products, etc. Deibel Laboratory was provided the following substances in powdered form: Luria Broth (LP), Buffered Peptone Water (BPW), Buffered Listeria Enrichment Broth (BLEB), and Non Fat Dairy Milk (NFDM). In order to make the

13

media properly, we were required to mix the above powdered substances with mandated distilled water. Scarbrough instructed us to use tap-faucet water. This violated the *FDA Bacteriological Analytical Manual (BAM) Media 111 - 8th Addition Revision A; Non-fat Dry (Dairy) Milk*.

76. Defendant Colleen Scarbrough stated when I began working in the media department that I did not have to wear any protective gear (PPE) only gloves. Under FDA regulation *Title 21 Section 177.10* lab personnel were required to wear aprons, goggles, face shield(s) and have on a lab coat. My co-workers who would help out in the media department at times would not wear any protective equipment. Michael Jeffrey and other co-workers can attest and verify this.

77. On April 04-05, 2023, the days of the M&M Mars audit, everyone wore their protective equipment (PPE) in the whole facility. Plaintiff had never seen any Deibel Lab employees wear their full protective equipment other than gloves while employed with Deibel Lab until the day of the M&M Mars audit. This was to fool M&M Mars Auditors that we were always compliant.

78. Defendant Scarbrough and Quality Control personnel (Caucasian female) instructed us to fill up approximately 180 (one hundred-eighty) media jugs at night with tap-faucet water; and to put caps on all jugs to keep out air spores from getting in the jugs overnight. Air spores create cross contaminates that could easily be detected if immediately tested. This was also designed to fool Auditors if Deibel were to have a surprise audit of any of its food processing-testing clients.

79. Defendant Scarbrough instructed us (Media Department) only to use distilled water in Petri dishes and for the media we put in test tubes. This is because using test tubes to test media for bacteria contaminates could be easily detected if tap-faucet water or distilled water was used.

80. Deibel Laboratory had two (2) Autoclaves (sterilizing machines) mandated by the FDA they were in different rooms and marked for separate use. One Autoclave was specifically used for sterilizing all bio hazards (old test tubes, media caps, and jugs, etc.). The other Autoclave

14

was specifically designated to be used for sterilization of the media that is used for food testing. This was mandated for accurate testing of Salmonella (for chicken products), Salmonella Vidas, and Listeria for chocolate products. Defendant Scarbrough instructed us that we could use both Autoclaves for the same purpose(s); sterilizing the food media; and for disposing of bio hazards.

81. On the days of the M&M Mars audit (April 04-05, 2023), Defendant Colleen Scarbrough instructed us (Michael Jeffrey and I) to put the media taken out of the Autoclave and put it inside the Incubator. This was performed on audit day. This was a required procedure under the FDA regulatory process. Scarbrough instructed us when we take media out of the Autoclave, put the media on the rolling shelf and roll it into the room so the others can get to it quickly for testing.

82. Defendant Scarbrough stated in my first week of being placed in the media department, "the milk gets old faster and get clumpy where we cannot use it if we put it inside the Incubator." This is why Defendant had Plaintiff to constantly clean all of the media jugs to cover up for her intentional and gross negligent conduct. Defendant constantly yelled at this Plaintiff to hurry up. Plaintiff was called into the office on Friday, August 07, 2023 at 3:10 p.m. by Scarbrough to tell her to speed up. Plaintiff stated, "I am going as fast as I can". Defendant sent the Plaintiff home.

83. Scarbrough instructed Michael and I to use both Autoclaves to sterilize and process the food media and to sterilize the bio hazards (stating they both can be used for the same purpose). This was very serious cross contamination under FDA food, health and safety testing procedures.

84. The other Autoclave was specifically designated to be used for the sterilization of food media that is used for testing. This is required and mandated for accurate testing of Salmonella (for chicken), Salmonella Vidas and Listeria (for chocolate products). Ms. Scarbrough instructed and told Michael Jeffrey and I, to use both Autoclaves for sterilizing the media and for sterilizing bio hazards that this would save time. This was improper and a violation of USFDA regulations.

15

85. We always threw out these particular bio hazards on a regular basis (old test tubes, caps for media, etc.) without sterilizing them in the Autoclave(s). This was authorized by Defendant Colleen Scarbrough. Co-workers' Michael Jeffrey, Lead Person Diego Barajas- Microbiologist, and Blake Hodson can verify Scarbrough authorized these violations of U.S. FDA regulations.

<u>Fraud - T.C.A. 28-3-105; False Statements 18 U.S.C. §1001(a)(2); 31 U.S.C. §3729(a)(1)(B)</u>

86. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 85 above as is fully set forth herein.

87. Upon information and belief, Deibel Lab was producing fraudulent reports to its clients knowing of its improper, unlawful, and unacceptable testing procedures endangering the general public. Out of approximately 100 (one hundred) media being prepared, distilled water was only being used in about 2 to 3 products when Deibel tested for contaminates in clients food products.

88. Defendant Colleen Scarbrough instructed the media department that we could use both Autoclaves for the same purpose. This created contamination or cross contamination. This is a violation of FDA regulations. It is well known, food testing laboratories do not use the same 2 (two) Autoclaves for the same purpose. This is why Laboratories have at least two Autoclaves.

89. Autoclaves. We (media department) were required to do a daily report on what we put in and took out of the Autoclaves date, time, and what it was. We would place it in a folder for Quality Control. Expired and or outdated media and excess media that was not used was often thrown out without being sterilized in the Autoclave(s) which was authorized by Scarbrough.

90. Upon information and belief, Deibel Lab was producing fraudulent reports to its clients and whomever else they were submitting Autoclave reports to knowing bio hazards and the food processing media were being sterilized in the same Autoclaves. Deibel would not have disclosed this improper contamination practice to the state or federal government or its clients. These were food, health and safety violations; and fraudulent reporting. This endangered the general public.

16

## Intentional and Negligent Infliction of Emotional Distress

91. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 90 above as is fully set forth herein.

92. As a result of the wrongful actions of the Defendants', Plaintiff has suffered financially and emotionally. Plaintiff has experienced mental anguish, grief, anxiety, and stress as a result of Defendants' Deibel Lab and Colleen Scarbrough's actions. Defendants' conduct was intentional, irreprehensible, reckless, negligent, extreme, and outrageous causing Plaintiff emotional distress.

## VII. DAMAGES

93. As a result of the wrongful acts of the Defendants, Plaintiff has suffered both financially and emotionally. The Plaintiff lost job opportunities, wages, and benefits. Plaintiff experienced mental anguish and grief as a result of Defendants' unlawful, intentional, and malicious actions. Plaintiff request to be awarded punitive damages in an amount within the sound discretion of the jury. Defendants' acted intentionally, fraudulently, and maliciously with reckless a disregard of Plaintiff's protected rights with an evil and corrupt motive, also endangering the general public.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

a. That the Court issue and serve process on the Defendants and requires the Defendants' to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for the lost wages and the value of all employment benefits lost from the date of the discriminatory, retaliatory, and fraudulent actions of the Defendants;

c. In lieu of reinstatement Plaintiff requests front pay and punitive damages;

d. Compensatory damages pursuant to 42 U.S.C. §2000 e-3, e-5; 42 U.S.C. §1981a; §1981; 42 U.S.C. §2000 e-2(a)(1)(2); T.C.A. §50-1-304; THRA 4-21-101 et seq.;

17

e. Back pay;

f. future pecuniary losses;

g. emotional pain and suffering;

h. humiliation and embarrassment;

i. inconvenience;

j. mental anguish;

k. loss of enjoyment of life;

l. other non-pecuniary losses;

m. liquidated damages;

n. Costs of this lawsuit;

o. Any other damages Plaintiff may be entitled to;

p. Punitive damages allowed under Title VII; THRA T.C.A. 4-21-101 et. seq.; 42 U.S.C. §1981; T.C.A. §50-1-304; and T.C.A.; §28-3-105;

q. Plaintiff be awarded litigation expenses pursuant to this lawsuit;

r. Plaintiff be awarded the costs of this action pursuant to Title VII and all other asserted claims;

s. Attorney fee's (once an Attorney is retained);

t. and Plaintiff demands that a jury try all claims and issues triable by a jury.


_Kristian J. Parks_
Plaintiff, Kristian T. Parks
4904 Renezet Drive
Chattanooga, TN 37416
(423) 899-6686

18

Case 1:23-cv-00309-CEA-CHS   Document 1   Filed 12/27/23   Page 18 of 18   PageID #: 38