# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

KRISTIAN T. PARKS,          )
                            )        Case No. 1:23-cv-309

*Plaintiff*,          )
                            )        Judge Atchley

v.                        )
                            )        Magistrate Judge Steger

DEIBEL LABORATORIES OF    )
TENNESSEE, LLC and COLLEEN M.    )
SCARBROUGH,                )
                            )
*Defendants*.        )

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

Before the Court are Plaintiff Kristian T. Parks's Objection to Magistrate Judge Christopher H. Steger's December 28, 2024, Order [Doc. 78], Defendants Deibel Laboratories of Tennessee, LLC, and Colleen M. Scarbrough's Motion for Summary Judgment [Doc. 88], Parks's Motion to Strike Defendants' Response to her Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 91], Deibel's Motion to Compel [Doc. 98], Defendants' Motion to Strike Parks's Sur-reply to their Motion for Summary Judgment [Doc. 104], Parks's Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 106], and Defendants' Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 110]. For the following reasons, Parks's Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 78] is **OVERRULED**; Defendants' Motion for Summary Judgment [Doc. 88] is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**; Parks's Motion to Strike [Doc. 91] is **GRANTED**; Deibel's Motion to Compel [Doc. 98] is **DENIED WITHOUT PREJUDICE**; Defendants'

---

[1] The Court initially notes that in many of her filings, Plaintiff Kristian T. Parks accuses Magistrate Judge Christopher H. Steger of bias, corruption, and various improprieties. These are serious allegations and ones which Parks has failed to support with anything other than pure speculation. Such unfounded accusations have no place in this Court. Parks is placed **ON NOTICE** that further conduct of this nature will not be tolerated and may result in sanctions.

Motion to Strike [Doc. 104] is **GRANTED**; Parks's Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 106] is **OVERRULED**; and Defendants' Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 110] is **OVERRULED**.

## I.    BACKGROUND

Parks was employed at Deibel's Ooltewah laboratory from February 14 or 21, 2023, until April 12, 2023. [*See* Doc. 6 at ¶ 9; Doc. 89-1 at 22, 37]. Following her termination, Parks, an African American woman, filed a complaint with the EEOC alleging that she had been discriminated against. [*See* Doc. 1-1]. The EEOC issued Parks a right-to-sue letter, and this lawsuit followed. [*See id.*; Doc. 1].

Parks brings the following claims against Deibel and Scarbrough: (i) hostile work environment claims pursuant to Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act ("THRA"); (ii) discrimination claims pursuant to Title VII, the THRA, and 42 U.S.C. § 1981; (iii) retaliation claims pursuant to Title VII, the THRA, and 42 U.S.C. § 1981; (iv) a Tennessee Public Protection Act claim; (v) a breach of contract claim; (vi) an intentional infliction of emotional distress claim; (vii) a negligent infliction of emotional distress claim; and (viii) fraud claims pursuant to the Tennessee and Federal False Claims Acts. [Doc. 6]. As litigation of these claims has progressed, the docket has become inundated with motions and objections, each of which is ripe for review. The Court will begin with the pending Motions to Strike [Docs. 91, 104] as they affect what the Court may consider when ruling on the other motions and objections. The Court will then address Defendants' Motion for Summary Judgment [Doc. 88] before turning to the outstanding Objections to Magistrate Judge Steger's Orders [Docs. 78, 106, 110]. The Court will then conclude by addressing Defendants' Motion to Compel [Doc. 98].

## II.     MOTIONS TO STRIKE

### a.   Parks's Motion to Strike [Doc. 91]

Parks asks the Court to strike Defendants' Response to her Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 87] on the grounds that the Response is untimely pursuant to Federal Rule of Civil Procedure 72(b)(2). [Doc. 91]. Rule 72(b)(2), however, applies only to dispositive matters and prisoner petitions challenging conditions of confinement. As Magistrate Judge Steger's December 28, 2024, Order addressed a discovery issue (i.e., Defendants' Motion to Quash), Rule 72(b)(2) is inapplicable. Instead, objections to Magistrate Judge Steger's December 28, 2024, Order are governed by Rule 72(a).

Rule 72(a) does not provide a deadline by which a party must respond to an objection to a magistrate judge's order. Some federal district courts have addressed this omission by setting a response deadline in their local rules. *See* E.D. Mich. L.R. 72.1(d)(3). The Eastern District of Tennessee, however, has not. Instead, it relies on Local Rule 7.1—which sets the briefing schedule for motions generally—to determine when a party may file a response to a Rule 72(a) objection. *Daycab Co. v. Prairie Tech.*, 2021 U.S. Dist. LEXIS 249648, *5 (E.D. Tenn. Mar. 25, 2021). Pursuant to Local Rule 7.1(a), a party must file a response no later than 14 days after service of the opening brief, in this case Parks's Objection. As Defendants did not file their Response until 28 days after Parks's Objection, the Response is untimely. E.D. Tenn. L.R. 7.1. Accordingly, Parks's Motion to Strike [Doc. 91] is **GRANTED**. The Clerk is **DIRECTED** to strike Defendants' Response to Parks's Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 87] from the record.

3

### b. Defendants' Motion to Strike [Doc. 104]

Defendants ask the Court to strike Parks's Sur-reply regarding their Motion for Summary Judgment [Doc. 101] and accompanying Appendix [Doc. 101-1] on the grounds that Parks filed these items in violation of Local Rule 7.1. [Doc. 104]. Parks opposes the Motion, asserting that she had a right to respond to "address[] burden shifting and new arguments raised." [Doc. 108]. For the following reasons, Defendants' Motion to Strike [Doc. 104] is **GRANTED**.

Local Rule 7.1 governs motion practice in the Eastern District of Tennessee. It generally provides that whenever a motion is filed, other parties may respond to the motion, and the movant may reply to those responses. E.D. Tenn. L.R. 7.1(a). If a party wishes to file additional briefing, they may do so only through one of two methods. First, a party may seek leave of court to file additional briefing. E.D. Tenn. L.R. 7.1(d). Second, "a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed." *Id.* Here, Parks did not seek the Court's leave to file her Sur-reply. Accordingly, her Sur-reply must be stricken unless it is no more than 5 pages and calls the Court's attention to developments occurring after she filed her Response in opposition to Defendants' Motion for Summary Judgment. *Id.*; *Raudenbush v. Monroe Cnty.*, No. 3:11-cv-00625, 2019 U.S. Dist. LEXIS 54183, at *36 (E.D. Tenn. Mar. 29, 2019) (striking a sur-reply where the pro se plaintiff, among other things, failed to obtain leave of court before filing his sur-reply). Parks's Sur-reply fails on both fronts. Regarding its length, Parks's Sur-reply and attached Appendix total 49 pages, almost ten times the amount permitted by Local Rule 7.1(d). [*See* Docs. 101, 101-1]. Regarding the Sur-reply's contents, it does not address any developments occurring after Parks filed her initial Response but instead merely responds to Defendants' Reply. [*See* Docs. 97, 101, 101-1]. Accordingly, Parks's Sur-reply and Appendix are improper under Local Rule 7.1(d). Therefore,

4

Defendants' Motion to Strike [Doc. 104] is **GRANTED**. The Clerk is **DIRECTED** to strike Parks' Sur-reply to Defendants' Motion for Summary Judgment and accompanying Appendix [Docs. 101, 101-1] from the record.[2]

### III.    MOTION FOR SUMMARY JUDGMENT

#### a. Standard of Review

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may

---

[2] Parks's argument that she had a right to file a sur-reply to address "burden shifting" does not alter this conclusion. While many of Parks's claims are subject to a burden shifting framework, such frameworks do not alter the number or timing of briefs permitted to address a motion. Parties are expected to fully address the applicable law—including the effect of any burden shifting framework—in the number of briefs set by the Federal Rules of Civil Procedure and the Rules of this Court.

5

discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323

**b. Analysis**

Defendants have moved for summary judgment on all of Parks's claims. [*See generally* Docs. 88–89]. The problem with Defendants' Motion, however, is that they have filed it before the close of discovery. [Doc. 25 at ¶ 5(e) (stating that "[a]ll discovery…shall be completed by April 15, 2025." (emphasis in original))]. And although Federal Rule of Civil Procedure 56 does not prevent Defendants from doing this, the Sixth Circuit has recognized that "summary judgment should not ordinarily be granted before discovery has been completed[,]" particularly when civil rights claims are at issue. *Tarleton v. Meharry Med. Coll.*, 717 F.2d 1523, 1535 (6th Cir. 1983);

6

*see also Wells v. Corp. Accounts Receivable*, 683 F. Supp. 2d 600, 602 (W.D. Mich. 2010) ("[A] motion for summary judgment filed before the close of discovery is often denied as premature in this circuit, either on the opposing party's Rule 56(f) affidavit and request or on the court's own initiative without an explicit request from the opposing party."). Consequently, the Court will deny most of Defendants' Motion for Summary Judgment without prejudice to refiling following the close of discovery. That said, the Court is prepared to rule on the merits Parks's purported fraud/False Claims Act claims as they turn on purely legal questions.

Parks purports to bring "non-qui tam" False Claims Act and fraud claims against Defendants pursuant to the federal False Claims Act (31 U.S.C. §§ 3729–3733); the Tennessee False Claims Act (Tenn. Code Ann. § 4-18-101, *et seq.*); 18 U.S.C. §§ 1001, 1341, and 1346; and Tenn. Code Ann. § 28-3-105. [*See* Doc. 6 at ¶¶ 73–90; Doc. 92 at 12–24]. None of these statutes, however, authorize Parks to pursue her pro se fraud/False Claims Act claims against Defendants.

Starting with Tenn. Code Ann. § 28-3-105, it lists the limitation period for several causes of action under Tennessee law. It does not establish any private cause of action whether related to fraud or otherwise. *See* Tenn. Code Ann. § 28-3-105. Accordingly, Parks cannot base her fraud claims on Tenn. Code Ann. § 28-3-105. Turning next to 18 U.S.C. §§ 1001, 1341, and 1346, these are federal criminal statutes that do not establish private causes of action. *See Alexander v. Ky. Cabinet for Health & Family Servs.*, No. 17-5879, 2018 U.S. App. LEXIS 4077, at *6 (6th Cir. Feb. 20, 2018) (holding that 18. U.S.C. §§ 1341 and 1346 do not create a private cause of action); *Pondexter v. Sec'y United States HUD*, 788 F. App'x 93, 96 (3d Cir. 2019) (holding that 18 U.S.C. § 1001 does not create a private right of action). Therefore, Parks also cannot base her fraud claims on these statutes.

Looking to Federal False Claims Act, it is well established that "a plaintiff proceeding pro se cannot bring a qui tam claim under the False Claims Act on behalf of the government." *Stephens v. Nat'l City Corp.*, 2021 U.S. App. LEXIS 17799, *11 (6th Cir. June 14, 2021) (citing *Downey v. United States*, 816 F. App'x 625, 627 (3d Cir. 2020) (per curiam); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93–94 (2d Cir. 2008)); *see also United States ex rel. Szymczak v. Covenant Healthcare Sys.*, 207 Fed. Appx. 731, 732 (7th Cir. Dec. 27, 2006). ("[A] qui tam relator—even one with a personal bone to pick with the defendant—sues on behalf of the government and not himself. He therefore must comply with the general rule prohibiting nonlawyers from representing other litigants."). As Parks is proceeding pro se in this matter, this means that she cannot pursue a Federal False Claims Act claim.

Parks attempts to avoid this conclusion by asserting that she is pursuing a "non-qui tam False Claims Act-Fraud action[.]" [Doc. 92 at 19 (emphasis omitted)]. The problem with this argument, however, is that no such claim exists. The Federal False Claims Act contains two enforcement mechanisms. 31 U.S.C. § 3730(a)–(b); *United States ex rel. Kathleen v. Cmty. Health Sys.*, 24 F.4th 1024, 1030 (6th Cir. Jan. 25, 2022). First, "the Attorney General may bring a civil action against a person violating § 3729 of the FCA." *Id.* (Citing 31 U.S.C. § 3730(a)). Second, "a private person, called a relator, may bring a qui tam action for violation of the FCA 'for the person *and for the United States Government.*'" *Id.* (emphasis added) (quoting 31 U.S.C. § 3730(b)(1)). There is no third option whereby a plaintiff may "proceed[] in [her] individual capacity, not representing the Government or anyone else," as Parks claims she is doing in this case. [Doc. 92 at 19]. Consequently, Parks cannot pursue a pro se Federal False Claims Act claim.

The same is true regarding the Tennessee False Claims Act. It, like the Federal False Claims Act, has two enforcement mechanisms. *See* Tenn. Code Ann. § 4-18-104(a)(1), (c)(1).

8

First, the Tennessee Attorney General and Reporter may bring a civil action against a person or entity for violating the Tennessee False Claims Act. Tenn. Code Ann. § 4-18-104(a)(1). Second, a private individual may bring a qui tam action "for the person *and* either for the state in the name of the state, if any state funds are involved, or for a political subdivision in the name of the political subdivision, if political subdivision funds are involved, or for both the state and political subdivision if state and political subdivision funds are involved." Tenn. Code Ann. § 4-18-104(c)(1) (emphasis added). There is no third option that allows a plaintiff to proceed only in her individual capacity nor is there any portion of the Tennessee False Claims Act that authorizes a pro se plaintiff to pursue a qui-tam action. Therefore, Parks cannot pursue a pro se Tennessee False Claims Act claim.

Consequently, none of the statutes relied upon by Parks give her the ability to pursue her fraud/False Claims Act claims against Defendants. As no amount of discovery could change this result, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [Doc. 88] as to Parks's fraud/False Claims Act claims. These claims are hereby **DISMISSED WITH PREJUDICE**. The remainder of Defendants' Motion [Doc. 88] is **DENIED WITHOUT PREJUDICE** to refiling following the completion of discovery.

## IV.  OBJECTIONS TO MAGISTRATE JUDGE STEGER'S ORDERS

Magistrate Judge Steger entered orders addressing discovery issues in this case on December 28, 2024, [Doc. 74] and February 24, 2025, [Doc. 99]. Parks objects to both Orders [Docs. 78, 106], and Defendants object to the portion of Magistrate Judge Steger's February 24, 2025, Order requiring them to produce contracts between Deibel and two of its clients [Doc. 110]. For the following reasons, all Objections [Docs. 78, 106, and 110] are **OVERRULED**.

9

### a. Standard of Review

A party may object to a magistrate judge's order on a non-dispositive issue within 14 days of the order being served. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). If a party files a timely objection, then the district court "has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. Oct. 12, 1993) (citing 28 U.S.C. § 636(b)(1)(A)). "Under this standard, the magistrate judge's determination may be overturned by the district court only if it is 'clearly erroneous or contrary to law.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* FED. R. CIV. P. 72(a). The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standards applies to legal conclusions. *Graham Packaging Co., L.P. v. Indorama Ventures Alphapet Holdings, Inc.*, 2024 U.S. Dist. LEXIS 206915, *5 (W.D. Ky. Nov. 14, 2024). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. Oct. 4, 2019) (cleaned up). And "[a] legal conclusion is contrary to law only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Michael v. State Farm Fire & Cas. Co.*, 2024 U.S. Dist. LEXIS 114486, *3 (W.D. Tenn. June 28, 2024).

### b. Analysis

#### i. *Magistrate Judge Steger's December 28, 2024, Order*

On December 28, 2024, Magistrate Judge Steger entered an Order granting Defendants' Motion to Quash which sought to quash seven subpoenas that Parks issued to six nonparty entities. [Doc. 74]. As part of this Order, Magistrate Judge Steger sanctioned Parks pursuant to Federal Rule of Civil Procedure 45(d)(1) and ordered her to pay Deibel's "reasonable and necessary

attorney fees and expenses in connection with Deibel's attorneys' preparation of the Motion to Quash (and supporting brief) [Doc. 56]. As well as the court appearance on such motion." [Doc. 74 at 6–7]. Parks objects to both the quashing of her subpoenas and Magistrate Judge Steger's imposition of sanctions. [Doc. 78]. She is not entitled to relief on either front.

Starting with the subpoenas, Magistrate Judge Steger quashed them on two independent grounds. [*See generally* Doc. 74]. First, he found that the subpoenas imposed an undue burden on the subpoenaed entities in violation of Federal Rule of Civil Procedure 45. [*Id.* at 4–5]. Second, he found that the information sought by the subpoenas was irrelevant to Parks's claims and disproportionate to the needs of this case. [*Id.* at 6]. Neither conclusion was clearly erroneous or contrary law.

The quashed subpoenas demanded the following information from six nonparties:

- All "Contract Service Agreements" between Deibel Laboratory and the following entities: A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

- All insurance policies/limits for A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

- All "Quality Control reports" for A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

- All "synopsis/computation of billing-Invoices" for A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

- All "Autoclaves reports of cross-contamination" for A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

11

- All "Microbiology food process testing" from 2018 to 2024 for A2LA Accreditation Headquarters, M&M Mars Wrigley Corporation, Tip Top Poultry Plant, Creative Snacks Company, Tennessee Department of Environment Health Food Safety, and the U.S. Department of Justice Food and Drug Administration.

[Doc. 55-1].

Federal Rule of Civil Procedure 45(d)(3)(iv) requires a Court to quash or modify a subpoena that "subjects a person [or entity] to undue burden." "To determine whether a subpoena unduly burdens a nonparty, the Court must consider 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Fitzgerald Truck Parts & Sales, LLC v. United States*, 2023 U.S. Dist. LEXIS 59997, *6 (E.D. Mich. Apr. 5, 2023) (quoting *In re CareSource Mgmt.*, 289 F.R.D. 251, 253 (S.D. Ohio Jan. 3, 2013)).

In this case, the subpoenas seek a wide swath of information from the nonparties, much of which has no connection to the facts underlying this litigation or even to Deibel at all (e.g., the subpoenaed entities' insurance policy limits). [*See* Doc. 55-1]. The subpoenas' breadth is further exasperated by the fact that many of the subpoenas' demands lack any form of temporal limitation.[3] [*See id.*]. Given this, the Court finds that enforcing the subpoenas would have imposed an undue burden on the subpoenaed nonparties. *See Fitzgerald Truck Parts & Sales, LLC*, 2023 U.S. Dist. LEXIS 59997, *6. The Court further finds that the information sought by the subpoenas is largely irrelevant to Parks's claims and vastly disproportionate to the needs of this case in violation of

---

[3] Parks suggests that the subpoenas are not as broad as they appear because she "provided each subpoenaed third-party with a letter of clarification of what was being requested." [Doc. 78 at 7]. This letter, however, does not appear to be in the record, and it was not mentioned at either the hearing on Defendants' Motion to Quash or in Parks's briefing regarding the same. Furthermore, Parks has not even described how this alleged letter narrowed her subpoenas' demands. "New arguments cannot properly be raised for the first time in objections to a magistrate judge's discovery order." *Graham Packaging Co., L.P.*, 2024 U.S. Dist. LEXIS 206915, at *6 (cleaned up). Accordingly, the Court does not find that Parks's alleged clarification letter provides a basis for altering Magistrate Judge Steger's December 28, 2024, Order.

Federal Rule of Civil Procedure 26(b)(1). Consequently, it was neither a clear error nor contrary to law for Magistrate Judge Steger to quash the subpoenas.

Parks's arguments to the contrary are insufficient to warrant a different result. Parks first argues that the subpoenaed information is discoverable as it is relevant to her fraud/False Claims Act claims, her retaliation claims, and her Tennessee Public Protection Act ("TPPA") claim. [Doc. 78 at 4]. The Court disagrees. Regarding Parks's fraud/False Claims Act claims, the Court has already held that no such claims exist. Consequently, Parks is not entitled to discovery in support of these claims. Regarding Parks's retaliation and TPPA claims, they center on whether Parks was penalized for engaging in protected activity. Even assuming that Parks reported Deibel for defrauding its clients, much of the information sought by Parks's subpoenas would be irrelevant to proving either that there was fraud or that Parks was punished for reporting it. For example, the subpoenaed nonparties' insurance policies and billing invoices to entities other than Deibel are irrelevant to whether Parks was penalized for reporting fraud. The same is true of the subpoenaed nonparties' internal testing records and autoclave reports. Therefore, the subpoenaed information is not relevant to this action.

Parks next argues that Magistrate Judge Steger erroneously concluded at the hearing on Defendants' Motion to Quash that he could only enforce subpoenas within 100 miles. [Doc. 78 at 7]. While Magistrate Judge Steger did discuss the geographical limitations of the Court's ability to enforce subpoenas at the hearing, this is of no consequence. Even assuming that Parks is correct regarding the geographic scope of the Court's authority, there were other independent grounds for quashing the subpoenas as Magistrate Judge Steger found in his Order [*see* Doc. 74] and as the Court has already discussed. Consequently, this argument provides no basis for modifying Magistrate Judge Steger's decision. Lastly, Parks argues that even if her subpoenas were improper,

13

Magistrate Judge Steger abused his discretion in quashing rather than modifying them. [*See* Doc. 78 at 7–8]. The Court disagrees as Federal Rule of Civil Procedure 45(d)(3) expressly permits a judge to quash, as opposed to modify, a subpoena that would unduly burden a nonparty. *See also Lyons v. MY Pillow, Inc.*, No. 23-1308, 2023 U.S. App. LEXIS 32545, at *11 (6th Cir. Dec. 6, 2023) (stating that a court is not required "to consider whether a subpoena can be modified before quashing it"). Accordingly, it was neither clearly erroneous nor contrary to law for Magistrate Judge Steger to quash Parks's subpoenas.

This leaves the issue of sanctions. Federal Rule of Civil Procedure 45(d)(1) states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1) further provides that the Court must enforce this duty "and impose an appropriate sanction…on a party or attorney who fails to comply." Magistrate Judge Steger found that Parks had failed to take reasonable steps to avoid imposing an undue burden on the subpoenaed entities and that sanctions were warranted as a result. [Doc. 78]. Magistrate Judge Steger ordered Parks to pay Deibel "its reasonable and necessary attorney fees and expenses in connection with Deibel's attorneys' preparation of the Motion to Quash (and supporting brief) [Doc. 56], as well as the court appearance on such motion." [Doc. 74 at 6–7]. Parks challenges this decision on two grounds. First, she asserts that she took reasonable steps to avoid imposing an undue burden on the subpoenaed entities as she made twenty attempts to obtain the subpoenaed information from Deibel before seeking it through subpoenas. [Doc. 78 at 4–6]. Second, she asserts that none of the subpoenaed entities suffered an undue burden because the subpoenas were quashed and Deibel, rather than the subpoenaed entities, undertook the work to quash them. [*Id.* at 5–6]. Neither argument has merit.

Looking first to Parks's contention that she attempted to obtain the subpoenaed information from Deibel twenty times before resorting to subpoenas, this assertion is contradicted by the record and her own briefing. Parks lists the following as her "attempts" to obtain the subpoenaed information:

1. Her Notice of Non-Consent to Magistrate Judge Steger conducting all proceedings in this case [Doc. 19];

2. Her unilaterally submitted draft Rule 26(f) Report [Doc. 21];

3. A letter she filed concerning Defendants' alleged failure to consult with her regarding the Rule 26(f) Report [Doc. 22];

4. The parties' Joint Rule 26(f) Report [Doc. 24];

5. Her June 28, 2024, Notice wherein she claimed that Deibel was not producing its business contracts or insurance policies [Doc. 31];[4]

6. Her First Set of Interrogatories and Requests for Production [Doc. 32];

7. Her Motion for Recusal regarding Magistrate Judge Steger [Doc. 35];

8. A letter she received from Deibel wherein it stated that it would not produce "confidential and proprietary information that it is not required to produce by Rule 26, including its "standards contract(s)" and its "annual revenue from 2018 to 2024." [Doc. 78 at 6];

9. Defendants' Response to her First Set of Interrogatories and Requests for Production [*id.*];

10. Her Response to Defendants' October 1, 2024, Motion to Compel wherein she states that she will likely seek third-party subpoenas [Doc. 47];

11. The hearing on Defendants' October 1, 2024, Motion to Compel [Doc. 78 at 6];

12. Defendants' Supplemental Response to her First Set of Interrogatories and Requests for Production [*id.*];

13. Her October 29, 2024, Notice wherein she alleged that Defendants were not complying with the rules of discovery [Doc. 54];

---

[4] This was originally construed as a motion to compel until Parks clarified that it was filed only to place the Court on notice of Defendants' behavior. [Doc. 39 at 1–2 (citing Doc. 35 at 2)].

14. Her alleged letters to the subpoenaed nonparties clarifying what information she was seeking [Doc. 78 at 6];

15. Defendants' Motion to Quash the at-issue subpoenas [Doc. 56];

16. Defendants' Memorandum in support of its Motion to Quash [Doc. 57];

17. Her Supplemental Response to Defendants' discovery requests [Doc. 59; *see also* Doc. 59-1];

18. Her Response in Opposition to Defendants' Motion to Quash [Doc. 60];

19. Defendants' Reply regarding their Motion to Quash [Doc. 69]; and

20. Her Response to Defendants' Reply regarding the Motion to Quash [Doc. 70].

[Doc. 78 at 5–6]. Some of these efforts, like Parks's discovery requests, do appear to represent her efforts to obtain at least a portion of the subpoenaed information without resorting to nonparty subpoenas. But many of the other "attempts" listed by Parks have nothing to do with the at-issue information (e.g., her Notice of Non-Consent) and some, such as Defendants' Motion to Quash and accompanying briefing, are not even actions that Parks took. Consequently, the Court does not find that Parks made twenty attempts to obtain the subpoenaed information as she claims. Nevertheless, the record reflects that Parks made some attempt to obtain at least a portion of the subpoenaed information from Defendants. Accordingly, the question becomes whether these efforts qualify as "reasonable steps" that shield Parks from Rule 45(d)(1) sanctions. They do not. It was neither clearly erroneous nor contrary to law for Magistrate Judge Steger to find that Parks's efforts were not reasonable given the subpoenas' scope and general lack of relevance. Consequently, Parks cannot avoid sanctions merely by asserting that she took some efforts to reduce her subpoenas' burden on the nonparties.

Parks's argument that she cannot be sanctioned because the subpoenaed nonparties were not actually burdened fares no better. Parks asserts that the subpoenaed entities did not suffer any

16

burden from her subpoenas because Magistrate Judge Steger quashed them before anything was produced and Deibel, rather than the subpoenaed entities, filed and argued the Motion to Quash. [*See* Doc. 78 at 5, 8]. The Sixth Circuit, however, has already rejected this kind of argument. In *Lyons v. MYPillow, Inc.*, a party was sanctioned for violating Rule 45(d)(1). 2023 U.S. App. LEXIS 32545, at *4. On appeal, the sanctioned party argued "that the magistrate judge did not have discretion to impose sanctions because [the subpoenaed nonparty] was not actually burdened" as he "did not produce any requested materials before moving to quash[.]" *Id.* at *14–15. The Sixth Circuit was not persuaded, stating that "[c]ourts can hold that a subpoena is unduly burdensome without any evidence that the recipient has already shouldered the cost of compliance." *Id.* at *15. To hold otherwise, the Sixth Circuit cautioned, "would lead to absurdly circular results: a subpoena recipient would have to comply and pay the associated costs to show that the subpoena is unduly burdensome and then convince a court to quash it." *Id.* This "would defeat the protections for nonparties embedded in Rule 45." *Id.* Accordingly, the Court finds that the lack of actual burden on the subpoenaed nonparties did not preclude Magistrate Judge Steger from finding that sanctions were warranted.

Based on the foregoing, the Court finds that nothing in Magistrate Judge Steger's December 28, 2024, Order [Doc. 74] was clearly erroneous or contrary to law. Consequently, Parks's Objection [Doc. 78] is **OVERRULED**. The subpoenas remain quashed and the sanction against her stands.

### ii. *Magistrate Judge Steger's February 24, 2025, Order*

On February 24, 2025, Magistrate Judge Steger entered an Order granting in part and denying in part Parks's January 16, 2025, Motion to Compel and for Sanctions. [Doc. 99]. Specifically, Magistrate Judge Steger ordered Defendants to provide additional information in

response to some of Parks's discovery requests but did not sanction Defendants or require them to provide all the information Parks requested. [*Id.*]. Parks objects to this Order to the extent that it does not fully grant her Motion to Compel and for Sanctions. [Doc. 106]. Defendants also object to the Order, but only to the portion requiring them to produce the 2023 contracts between Deibel and two of its clients. [Doc. 110]. For the following reasons, both Objections [Docs. 106, 110] are **OVERRULED**.

Starting with Parks's objection, it is largely premised on the argument that Magistrate Judge Steger erred by excluding any information relating solely to Parks's fraud/False Claims Act claims from the scope of discovery. [*See generally* Doc. 106]. But as the Court has held that Parks has no such claims, it was neither clearly erroneous nor contrary to law for Magistrate Judge Steger to restrict the scope of discovery as he did. Parks also asserts that Magistrate Judge Steger erred in limiting Defendants' responses to her Second Set of Interrogatories, Interrogatory No. 10 and her Second Set of Requests for Production, Requests Nos. 8 and 9 to include only documents going back to 2023, not 2018 as she requested. [*See* Doc. 106 at 7–8]. Parks claims that Defendants' activities during this extended date range are relevant to her TPPA and retaliation claims. [*See id.*]. But she provides no explanation why this is the case other than by describing the limitations period applicable to False Claims Act claims and stating that "the discovery door has been opened pursuant to Fed. R. Civ. P. 26(b)(1)[.]" [*Id.*]. Given this cursory explanation and considering the limited relevance that information from 2018 would have on Parks's TPPA and retaliation claims—which center on whether Parks's suffered an adverse employment action for engaging in protected activity during her 2023 employment with Deibel—the Court cannot find that Magistrate Judge Steger committed a clear error or made a decision contrary to law by limiting the time period applicable to Parks' Second Set of Interrogatories, Interrogatory No. 10 and her Second Set of

18

Requests for Production, Requests Nos. 8 and 9. As for Parks's objection to the fact that Magistrate Judge Steger declined to impose sanctions on Defendants, this too was neither a clear error nor contrary to law given the wide discretion afforded to courts to determine when discovery sanctions are appropriate. *See Zell v. Klingelhafer*, No. 2:13-CV-00458, 2015 U.S. Dist. LEXIS 126756, at *11–12 (S.D. Ohio Sep. 22, 2015). Accordingly, Parks's Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 106] is **OVERRULED**.

Turning to Defendants' Objection, they assert that Magistrate Judge Steger erred when he held that they must supplement their response to Parks's First Set of Requests for Production, Request No. 12 to include Deibel's 2023 contracts with M&M Mars Wrigley Corporation (located in Cleveland, TN) and Tip Top Poultry Plant (located in Marietta, GA) on the ground that those contracts were relevant to Parks's TPPA claim. [Doc. 110]. Defendants generally assert that these contracts are irrelevant to Parks's TPPA claim because she limited her discussion of Request No. 12's relevance to her (now-dismissed) fraud/False Claims Act claims and failed to establish that Deibel is governed by FDA regulations, meaning that Deibel's alleged failure to follow FDA regulations is not an "illegal activity" which could give rise to a TPPA claim. [*See generally id.*]. The Court is not convinced.

Parks, as a pro se party, is entitled to a liberal construction of her pleadings and filings. *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006). Accordingly, the Court finds it of little consequence that she stated Request No. 12 related to her False Claims Act claims as opposed to her TPPA claim, especially where she specifically stated that the information sought by Request No. 12 was relevant to "False Claims Act – Retaliation." [Doc. 83 at 4]. That Parks mentioned retaliation suggests that she recognizes the information sought by Request No. 12 may help establish whether she was terminated for engaging in protected activity, and the Court will not

19

deny her discovery merely because she associated her request with the wrong claim. The issue is relevance, and Magistrate Judge Steger—after giving Parks and Defendants the opportunity to address this issue—correctly found that the contracts he ordered Defendants to produce could support Parks's TPPA claim.

Looking next to whether the contracts' relevance depends on whether Deibel is subject to FDA regulations, the Court finds that it is not. As Magistrate Judge Steger noted at the hearing on Parks's Motion, Deibel could have committed "illegal activity," the reporting of which could give rise to a TPPA claim, by deceiving its clients regarding the nature of the tests it was performing. If, for example, Deibel's contracts with its clients required Deibel to perform tests in accordance with standards set by the FDA, then Deibel's willful failure to abide by those standards could potentially amount to illegal activity irrespective of whether Deibel would otherwise be bound by FDA regulations. If Parks was terminated for reporting such deception, then she may have a viable TPPA claim regardless of whether Deibel is directly regulated by the FDA. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011) (listing the elements of a TPPA claim). As the contracts Magistrate Judge Steger ordered Defendants to produce directly relate to whether Deibel engaged in this kind of deception, they are relevant to Parks's TPPA claim. *See* FED. R. CIV. P. 26(b)(1); *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, No. 12-23-DLB-JGW, 2014 U.S. Dist. LEXIS 199154, at *5 (E.D. Ky. Mar. 5, 2014) (discussing the broad definition of relevance). Accordingly, it was neither clear error nor contrary to law for Magistrate Judge Steger to order Defendants to produce Deibel's 2023 contracts with M&M Mars Wrigley Corporation (located in Cleveland, Tennessee) and Tip Top Poultry Plant (located in Marietta, Georgia), and Defendants' objection to the same [Doc. 110] is **OVERRULED**.

## V.    MOTION TO COMPEL

Deibel has moved to compel Parks to pay its attorney's fees and expenses in accordance with Magistrate Judge Steger's December 28, 2024, Order. [Doc. 98]. While it is true that Parks has failed to comply with the Order's deadlines, the Court does not fault her for this given that it has only just resolved her Objection to the imposition of sanctions. Accordingly, rather than compel her to make payment at this time, the Court will afford Parks the opportunity to satisfy her sanction without further Court intervention. Therefore, Deibel's Motion [Doc. 98] is **DENIED WITHOUT PREJUDICE**. Attorneys Bowman and Snodgrass are **ORDERED** resend their statement of services and expenses and accompanying affidavit [Doc. 98-2] to Parks within **two weeks** from the date of this Order. If Parks does not pay such amount within **30 days**, then Deibel **SHALL** file a renewed motion to compel with the Court.

## VI.    CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** the following:

1. Parks's Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 78] is **OVERRULED**.

2. Defendants' Motion for Summary Judgment [Doc. 88] is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Parks's fraud/False Claims Act claims are **DISMSSED WITH PREJUDICE**. Defendants may file a new motion for summary judgment regarding Parks's remaining claims after the close of discovery.

3. Parks's Motion to Strike Defendants' Response to her Objection [Doc. 91] is **GRANTED**. The Clerk is **DIRECTED** to strike Defendants' Response to Parks's Objection to Magistrate Judge Steger's December 28, 2024, Order [Doc. 87] from the record.

4. Deibel's Motion to Compel [Doc. 98] is **DENIED WITHOUT PREJUDICE**. Attorneys Bowman and Snodgrass **SHALL** resend their statement of services and expenses and accompanying affidavit [Doc. 98-2] to Parks within **two weeks** from the date of this Order. If Parks does not pay such amount within **30 days**, then Deibel **SHALL** file a renewed motion to compel with the Court.

5. Defendants' Motion to Strike Parks's Sur-reply to its Motion for Summary Judgment [Doc. 104] is **GRANTED**. The Clerk is **DIRECTED** to strike Parks' Sur-reply to Defendants'

Motion for Summary Judgment and accompanying Appendix [Docs. 101, 101-1] from the record.

6. Parks's Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 106] is **OVERRULED**.

7. Defendants' Objection to Magistrate Judge Steger's February 24, 2025, Order [Doc. 110] is **OVERRULED**.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**